```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID WALD, an individual, on behalf of himself  :
and a class of persons similarly situated,       :
                                                 :
                        Plaintiff,               :       MEMORANDUM & ORDER
                                                 :
            -against-                            :       11-cv-5957 (ENV) (JO)
                                                 :
BANK OF AMERICA CORPORATION,                     :
THE BANK OF AMERICA CORPORATION                  :
CORPORATE BENEFITS COMMITTEE,                    :
BARBARA J. DESOER, BRIAN T. MOYNIHAN,            :
CHARLES H. NOSKI, WILLIAM P. BOARDMAN,           :
SUSAN E. KELLY, and JOHN DOES 1-10,              :
                                                 :
                        Defendants.              :
-----------------------------------------------------------------X
```

**VITALIANO, D.J.**

Plaintiff David Wald filed this putative class action on December 7, 2011, alleging violations of the Employee Retirement Investment Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., by Bank of America Corporation ("BOA"), BOA's Corporate Benefits Committee, and several BOA officers, directors, and employees (collectively, the "BOA defendants"). Plaintiff contends defendants breached their fiduciary duties under ERISA by investing covered funds in BOA securities, which they knew to be an imprudent investment, and failing to disclose to plan-participants the true risks associated with BOA stock. The BOA defendants now move to transfer this action to the Southern District of New York, where a securities class action against BOA (among other defendants) is currently pending. For the reasons stated below, defendants' motion is granted.

## Background

The root of this case taps BOA's practices and procedures regarding foreclosure of troubled residential mortgage loans, especially loans associated with its 2008 acquisition of

Countrywide Financial Corporation. According to plaintiff, improprieties in chain-of-title documentation for securitized mortgage loans led BOA to engage in a pattern of fraud and misrepresentation in foreclosure proceedings nationwide. BOA's alleged bad behavior included failures to properly document mortgage transfers, due to, among other things, systemically incomplete or missing paperwork. Those failures, plaintiff claims, made it near impossible to lawfully foreclose on delinquent borrowers, which resulted in BOA's practice of foreclosing on loans by unlawful means, including using perjured affidavits, signed by individuals having little or no knowledge regarding the propriety of their averments (e.g., plaintiff alleges "robo-signing" of affidavits). Moreover, plaintiff asserts, since the ability to timely and efficiently foreclose on delinquent mortgages in appropriate cases is an essential element of BOA's lending business, BOA's deficient foreclosure practices jeopardized the bank's overall financial stability.

More to the point, plaintiff alleges the BOA defendants were fully aware of the bank's mortgage servicing problems from at least early 2009, yet failed to meaningfully acknowledge them. The failure to disclose the true extent of the weaknesses in BOA's residential mortgage portfolio, according to the complaint, resulted in an artificially inflated BOA stock-price. The fog of misinformation, the complaint continues, hid a) the bank's inability to properly collect on delinquent loans, and b) the unlawful practices employed in BOA's attempts to collect by fraud what it could not lawfully recoup.

Plaintiff was a participant in one of BOA's 401(k) retirement investment plans. These retirement plans were invested in BOA common stock during the relevant time period, May 1, 2009 to December 7, 2011. Over the course of that period, the complaint alleges, public awareness of BOA's pervasive mortgage-related problems resulted in a cloud of scandal shrouding BOA's business and reputation. Of course, it is next alleged that in the aftermath

there has been a material diminution in the value of BOA stock. It is that decline in stock price that gives birth to plaintiff's ERISA claim, which, in sum and substance, is that the BOA defendants' breached their fiduciary duties to plan participants by investing in BOA stock with knowledge of the bank's disastrous problems in its mortgage loan business line.

On September 23, 2011, a separate complaint was filed against BOA and various other defendants in the Southern District of New York ("Southern District").[1] That complaint consolidated four shareholder class actions claiming violations of securities laws arising out of a similar core of facts as alleged in this case. See Amended Complaint, Pa. Pub. Sch. Emp. Ret. Sys. v. Bank of Am. Co., No. 11-CV-00733-WHP (S.D.N.Y. Sept. 23, 2011). The Southern District case is currently pending before Judge William H. Pauley.

On December 21, 2011, an amended complaint was filed in the Southern District consolidating five derivative actions against the BOA board of directors. The amended derivative complaint alleged violations of fiduciary duties under state law. See Amended Complaint, In re Bank of Am. Mortgage Servicing Shareholder Derivative Litig., No. 11-cv-02475 (S.D.N.Y. Dec. 21, 2011). The consolidated derivative action also arises, in part, out of BOA's mortgage servicing improprieties, claiming the bank's directors breached their duties by allowing BOA to engage in its allegedly unlawful mortgage practices. Until recently, this case too was before Judge Pauley. However, on April 4, 2012, Judge Pauley granted plaintiff's motion to voluntarily dismiss the derivative complaint.

With obvious awareness of the consolidation of related cases in the Southern District charging improprieties identical to those charged here, on January 4, 2012, the BOA defendants

---

[1] Some the defendants named in the Southern District securities action are also joined in this case. Those defendants in common are BOA, Brian T. Moynihan, Charles H. Noski, and William P. Boardman.

moved to transfer this case to the Southern District pursuant to 28 U.S.C. § 1404.

## Legal Standard

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." See also Delta Airlines v. Ass'n of Flight Attendants, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." See In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992); see also Red Bull Assocs. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir. 1988); Solar v. Annetts, 707 F. Supp. 2d 437, 441 (S.D.N.Y. 2010).

On a motion under § 1404, the moving party "bears the burden of establishing the propriety of transfer by clear and convincing evidence." Ahmed v. T.J. Maxx Corp., 777 F. Supp. 2d 445, 449 (E.D.N.Y. 2011) (citing New York Marine and Gen. Ins. Co. v. Lafarge N.A., Inc., 599 F.3d 102, 114 (2d Cir. 2010)). That party "must demonstrate that . . . the transferee court is able to exercise jurisdiction over the parties and must be an appropriate venue of the action[] and . . . [that] the balance of convenience and justice favors transfer." Jones v. City of New York, No. 11-cv-5042 (CBA), 2012 WL 716890, at *1 (E.D.N.Y. March 5, 2012) (quotations omitted). Courts consider the following factors, among others, in determining whether the balance of convenience and the interests of justice favor transfer: (1) plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and other physical evidence; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with governing law; and (9) judicial economy and the

interests of justice. See Delta, 720 F. Supp. 2d at 217; see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006); Ahmed, 777 F. Supp. at 449. "There is no strict formula for the application of these factors, and no single factor is determinative." Delta, 720 F. Supp. 2d at 217 (quotations omitted).

## Discussion

As an initial matter, there is no dispute that this action could have been brought in the Southern District. What's more, given the relatively short walk across the Brooklyn Bridge separating the two districts, the Court finds—and other courts agree—that the following factors are neutral with regard to transfer requests: (1) the convenience of witnesses; (2) the location of relevant documents and other physical evidence; (3) the convenience of parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; and (7) the forum's familiarity with governing law. See, e.g., Jones, 2012 WL 716890, at *1; Park v. McGowan, No. 11-CV-3454, 2011 WL 6329797, at *4 (E.D.N.Y. Dec. 16, 2011); Ahmed, 777 F. Supp. 2d at 449; Rabbi Jacob Joseph School v. Province of Mendoza, 342 F. Supp. 2d 124, 131 (E.D.N.Y. 2004); see also Hershman v. Unumprovident Corp., 658 F. Supp. 2d 598, 601 n.1 (S.D.N.Y. 2009). The parties make no persuasive arguments as to why it would be physically more or less convenient to litigate this case in Brooklyn as opposed to Manhattan. Consequently—and the parties largely do not dispute this—the Court is left to decide whether the balance of equities with respect to (1) plaintiff's choice of forum and (2) the interests of justice and judicial economy weigh in favor of transfer on the movant's presentation of clear and convincing evidence.

A. Plaintiff's Choice of Forum is Entitled to Little Deference

Plaintiff is a resident of this district and argues he should not be denied his prerogative to

litigate in his chosen forum. "A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). This deference is much reduced, however, in a "class action, where members of the class are dispersed throughout the nation." In re Global Cash Access Holdings Secs. Litig., No. 08-cv-3516, 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008); see also Berman, 30 F. Supp. 2d at 659. Prosecuting a class action with a plethora of diverse claimants markedly diminishes the class representative's choice of forum objection "because the plaintiff is only one of many potential plaintiffs, all of whom could with equal show of right go into their many home courts." Strauss v. W. Highland Capital, Inc., No. 00-Civ-01184, 2000 WL 1505957, at *2 (S.D.N.Y. Oct. 6, 2000) (citing Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524-25, 67 S. Ct. 828, 832 (1947)) (quotations omitted); see also In re Collins & Aikman Corp. Secs. Litig., 438 F. Supp. 2d 392, 398 (S.D.N.Y. 2006) ("[I]n a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim.").

Unquestionably, that is the case here. Plaintiff purports to sue on behalf of "[a]ll current and former participants" in BOA's retirement plans, whose accounts held BOA stock at some point during a period exceeding two years. The putative class includes what may turn out to be thousands of individuals, each of whom could have filed this action in their home district, so long as ERISA's venue requirements were also met. See 29 U.S.C. 1132(e)(2). With the putative class undoubtedly spread over many federal districts, the fact that *this* plaintiff chose to file this action in the Eastern District weighs only lightly in the Court's § 1404 calculus.

B. The Interests of Justice and Judicial Economy Weigh In Favor of Transfer

"[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy," Williams v. City of New York, No. 03 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006); it can be "decisive," Delta, 720 F. Supp. 2d at 219. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." Id. (quoting Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968)). It is beyond dispute, then, that "the existence of a related action in the transferee district" weighs heavily in favor of transfer when considering judicial economy and the interests of justice. Id.; see also Jones, 2012 WL 716890, at *2.

To be sure, there are significant differences between the consolidated securities class action pending before Judge Pauley and this ERISA action. See, e.g., Brieger v. Tellabs, Inc., 434 F. Supp. 2d 567, 569 (N.D. Ill. 2006) (noting substantive distinctions between ERISA and securities laws). The interests of justice, however, "require that the cases be related, not identical." Columbia Pictures Indus. v. Fung, 447 F. Supp. 2d 306, 309-10 (S.D.N.Y. 2006); see also Delta, 720 F. Supp. 2d at 219 n.4.

Both this case and the Southern District securities class action arise from the same underlying factual predicate: that is, BOA's allegedly shoddy practices in its mortgage servicing business and the resulting fraud perpetrated in the bank's mortgage foreclosure process. Though the plaintiffs differ, several defendants overlap. Cutting even closer to the bone, both cases will rely heavily on facts regarding who at BOA had certain knowledge about its residential loan portfolio and mortgage servicing practices and when those individuals acquired such knowledge.

7

For example, in the securities class action, such fact determinations are essential with respect to the claims brought under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319, 127 S. Ct. 2499, 2507 (2007); see also 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Here, the same fact-finding is critical to proving defendants' breach of their fiduciary duties under ERISA and the common law of trusts. See generally 29 U.S.C. § 1104(a); Pegram v. Herdrich, 530 U.S. 211, 223-24, 120 S. Ct. 2143, 2151-52 (2000) ("These responsibilities imposed by ERISA have the familiar ring of their source in the common law of trusts.")

Simply put, the action currently pending in the Southern District is based on exceedingly "similar allegations and name[s] some of the same defendants as the present action." Collins & Aikman, 438 F. Supp. 2d at 398. The substantial factual overlap between the cases makes it "highly likely that [parties in both actions] will need access to the same witnesses and proof," Jones, 2012 WL 716890, at *2, which heavily favors transfer of this case in the interests of judicial economy so all discovery and factual disputes can be determined by the same court, following efficiently coordinated discovery across both actions.[2] See Collins & Aikman, 438 F. Supp. 2d at 398-99 ("[C]ourts regularly transfer cases such as plaintiff's where facts and witnesses overlap with cases pending in the transferee district."); see also Jones, 2012 WL 716890, at *2. In the same vein, the interests of justice further counsel in favor of transfer on this point to avoid duplicate discovery, multiplying costs in time and treasure on parties, counsel, and witness alike.

Though the equipoise on most factors might "ordinarily sustain a plaintiff's choice of

---

[2] Moreover, centralization and coordination of these actions in a single district and, ideally, before a single judge, will also go a long way to guard against inconsistent factual findings, especially on summary judgment.

8

forum," Delta, 720 F. Supp. 2d at 219, as noted above, not so the choice of forum by a class action plaintiff. Balanced against the clear and convincing showing by defendants that the interests of justice and judicial economy strongly favor transfer, plaintiff's choice of forum must yield.

## Conclusion

For the foregoing reasons, defendants' motion pursuant to 28 U.S.C. § 1404 to transfer venue of this action to the United States District Court for the Southern District of New York is granted. Any other pending requests for relief in this action are denied with leave to renew in the transferee court.

The Clerk of Court is directed to transfer this case in accordance with this Memorandum and Order and to close this docket.

**SO ORDERED.**

Dated: Brooklyn, New York
April 19, 2012

s/ ENV
_____
ERIC N. VITALIANO
United States District Judge